STATE OF VERMONT
ENVIRONMENTAL COURT

|   |   |   |
|---|---|---|
| **Appeal of Highlands Development Co., LLC and JAM Golf, LLC** | } } } } | **Docket No. 194-10-03 Vtec** |

## Decision and Order on Appellants' Partial
## Motion for Summary Judgment

This decision concerns an appeal from the Decision of the City of South Burlington Development Review Board (DRB) dated September 25, 2003, in which the master plan presented by Appellants Highlands Development Co., LLC, and JAM Golf, LLC, for the Vermont National Country Club (VNCC) development was approved in part, denied in part, and approved with conditions. Appellants are represented by William A. Fead, Esq.; the City, as Appellee, is represented by Amanda S. E. Lafferty, Esq. Appellants have moved for partial summary judgment challenging the adoption, scope, and applicability to their project of the newly adopted master plan provisions in the City's Land Development Regulations (LDRs): §§ 15.07 and 15.18.

Appellants' Motion for Summary Judgment asks this Court to address the following issues as presented by Questions 1, 2, and 3 of Appellants' Statement of Questions:

- Whether LDRs §§ 15.07 and 15.18, relating to Master plan review and Approval, were adopted lawfully on May 12, 2003;

- Whether the Master Plan Ordinance exceeds the zoning and planning authority of the City pursuant to the Vermont Planning and Development Act (the Act), 24 V.S.A. §§ 4301–4496 (2003) (as amended §§ 4301–4483 (2004)); and

- Whether master plan approval was needed for the Appellants' previously approved planned unit development (PUD) known as the VNCC.

## Factual Background

The following facts are not genuinely disputed unless otherwise noted:

1.     The property at issue, known as "Highlands at the VNCC," is a ±418-acre PUD with twelve residential neighborhoods surrounding a golf course that straddles Dorset Street in

the South East Quadrant (SEQ) zoning district.  The PUD was originally approved in 1996 and 1997.

2.      After a number of transactions between various entities, including a deed foreclosure, Appellant Highlands Development Co., LLC took title to the land permitted for residential development and Appellant JAM Golf, LLC took title to the golf course lands.

4.      Appellant Highlands Development Co., LLC does not develop the individual residential parcels itself.  Rather, it sells development parcels with multiple lots to individual residential developers, all under the auspices of the VNCC PUD.  Highlands' successors thereafter build and market their projects as they see fit.

5.      Four neighborhoods are fully built: Four Sisters, Nowland Farm, Holbrook/Tabor, and Fairway Drive.

6.      The three individual developments within the VNCC PUD currently at issue are the Old Schoolhouse and Water Tower neighborhoods, both of which were purchased by the Wedgewood Development Company, Inc., and a tract known as Residential Parcel 3, or the Clubhouse Area, which remains unsold.

7.      In 1996 and 1997, the Planning Commission first approved the VNCC PUD as a mixed use development on ±418 acres with 191 single-family residential units, forty multi-family units, and an eighteen-hole golf course and country club, with the associated roads and utilities throughout the PUD.  In the present appeal, the parties did not submit these previous permits and subsequent approvals.  The Court only has before it the applications and prior decisions for amending the Old Schoolhouse and Water Tower neighborhoods, as well as Residential Parcel 3.

8.      Since the initial PUD approval, Appellants or their successors have applied to amend the original VNCC PUD by increasing the number of residential units.

9.      Under the City's old Subdivision and Zoning Regulations, after the original PUD was approved as a major subdivision, developers had to first file a preliminary sketch plan with the DRB for classification and discussion to improve individual development tracts.  See City's Ex. A, § 201.  After sketch plan approval, they had to file a preliminary plat application and map with complete details of the project, which may be approved with conditions.  See id. § 203. Lastly, a final plat application had to be filed and recorded that conforms to the conditions required at the conclusion of the Planning Commission's review.  See id. § 204.

10. The City purportedly adopted the new LDRs on May 12, 2003, which replaced the old Subdivision and Zoning Regulations in their entirety. Before the adoption of the new LDRs, the City mailed notice of the proposed zoning amendment to all neighboring towns and the regional planning commission. However, the City failed to send prior notice to the Vermont Department of Housing and Community Affairs. See Appellants' Ex. 3, at 6–7. The first public hearing on the amended LDRs was noticed in the Burlington Free Press on March 8, 2003. See City's Ex. O.

11. The new LDRs changed the review process for larger developments. Two of the new LDRs' provisions, §§ 15.07 and 15.18, require certain major subdivisions and PUDs to undergo master plan review before preliminary plat review could proceed. Master plan review allows the whole project to be discussed at the DRB level and allows an applicant to request an amendment to a portion of that project, which can be reviewed concurrently with the master plan. The DRB can thus determine the overall impacts of a development on public facilities and institutions, protect open space and natural areas, and discourage the piecemeal development that occurs when multiple amendments to a PUD are filed separately.

12. In 2002, before adoption of the amended LDRs, Appellants filed applications for Subdivision Sketch Plan Review to amend the original VNCC PUD by increasing housing units for the Old Schoolhouse and Water Tower neighborhoods, as well as Residential Parcel 3. See City's Ex. B, C, H, I, J, K.

13. Later, in April of 2003 and after the LDR amendments were noticed, Appellants filed applications for Preliminary Subdivision Plat Review of the Old Schoolhouse and Water Tower neighborhoods. City's Ex. D, E, G, L, M. Appellants did not file a Preliminary Plat application for Residential Parcel 3 until they submitted their master plan application.

14. In June 2003, the DRB reopened hearings on Appellants' applications for Preliminary Subdivision Plat Review because the Board determined that master plan review was required prior to the DRB's consideration of Appellants' applications, pursuant to LDR § 15.07.

15. Appellants submitted their master plan application on June 23, 2003, in which the Appellants proposed how the individual unsold lots may be developed in the future.

16. On September 25, 2003, the DRB issued its Findings of Fact, Findings on the Applicable Criteria in LDR § 15.18(A) and (B), and its Decision and Conditions, which

approved Appellants' Preliminary Subdivision Plats, denied portions of the master plan application, and attached conditions to other aspects of the project.  See Appellants' Ex. 5.

## Discussion

Appellants allege that the Master Plan Ordinance is void because the City failed to provide prior notice the Vermont Department of Housing and Community Affairs (DHCA) when adopting the new Land Development Regulations.  At the outset, we note that Appellants' notice of appeal was filed within the two-year period to challenge zoning amendments.  24 V.S.A. § 4494(b) (new § 4483(b)).

The Vermont Planning and Development Act requires the City, fifteen days prior to proposing a bylaw amendment, to send copies of the proposed zoning amendment to the planning commission of neighboring towns, the director of the regional planning commission, and the DHCA.  24 V.S.A. § 4403(e) (new § 4441(e)).  The City admits that it failed to deliver a copy of the proposed bylaw revisions to DHCA "with proof of receipt, or mail[] by certified mail, return receipt requested."  42 V.S.A. § 4403(e); see also City's Opp'n to Appellants' Mot. for Partial Summ. J. at 8 (admitting that the City failed to send by certified mail or to deliver a copy of the amendments with proof of receipt).

Significant defects in the adoption of zoning amendments may cause those amendments to fail.  However, 24 V.S.A. § 4494(a) (new § 4483(a)) saves this LDR amendment, including the Master Plan Ordinance, because it prevents the Court from invalidating bylaw amendments "because of a failure to adhere to strict and literal requirements of [the Act] concerning minor or nonessential particulars."  24 V.S.A. § 4494(a) (new § 4483(a)).  "The [C]ourt shall uphold the . . . bylaw, or action if there has been substantial compliance with the procedural requirements of this chapter."  Id.

Before the adoption of the new LDRs, the City sent notice of the bylaw amendment to neighboring municipalities and the Chittenden County Regional Planning Commission.  See Appellants' Ex. 3, at 6–7.  The City was also in contact with the DHCA regarding the new LDRs in early 2003.  Aff. of Juli Beth Hinds, at 2.  The City's failure to officially notice the DHCA of their LDR amendment is exactly the "minor or nonessential particular[]" that the Legislature intended to prevent from invalidating zoning bylaws by enacting 24 V.S.A. § 4494(a).  The City's mistake in not providing prior notice to the DHCA, via certified mail, with return receipt

requested, does not materially affect the adoption of the new LDRs, which are valid and effective as amended on May 12, 2003.

Appellants also challenge the Master Plan Ordinance because it allegedly exceeds the scope of its enabling legislation by requiring "speculation" as to specific uses of unbuilt subdivisions. Appellants continue this challenge by asserting that such speculation conflicts with the Vermont Supreme Court's determination that "there is no requirement that the subdivider know what uses will be placed on those lots" during the application process. See In re Taft Corners Assoc., Inc., 171 Vt. 135, 141 (2000); LDR § 15.07(C)(3)(e) (requiring an overall plan for the property including the location and total area of the properties proposed for subdivision).

Appellants' accusation that the City's permitting requires "speculation" would be more on point if this case only concerned a subdivision. However, Appellants' argument must fail here because the Appellants are requesting development authority by virtue of their request to amend the VNCC PUD approval. The purpose of planned unit development review "is to merge zoning and subdivision requirements." In re Stowe Club Highlands, 164 Vt. 272, 276 (1995). The PUD permitting process often requires "speculation" regarding the proposed future use for a property. Because the VNCC is a PUD, the applicable rules differ from those relevant to conventional subdivisions.

Appellants' concerns speak to a problem faced by developers of large or even small tracts of land: how can the developer best determine what configuration of development options will best suit the particular tract of land and best be received in the real estate marketplace. Municipalities also face difficulties in trying to predict what demands for services a new development, particularly a development as significant as VNCC, will impose on its community.

The concept of requiring that a master plan application be submitted for major developments is an attempt to balance these competing concerns. Such an application allows municipalities to receive the developers' overview of what may be proposed on an entire tract. While the master plan provisions here require some detail of the overall project, see LDR § 15.07(C)(3), such approval may be amended, see LDR § 15.07(D). In fact, master plan approval may afford some efficiencies to a developer by reducing the level of future review for subsequent applications, see LDR § 15.07(D)(2)), and by eliminating the need for sketch plan review, see LDR § 15.07(D)(4).

When reviewing the legality of zoning amendments, "[w]e start with the proposition that zoning enactments are entitled to the presumption of validity." Galanes v. Town or Brattleboro, 136 Vt. 235, 240 (1978). Furthermore, "[c]ourts will not interfere with zoning unless it clearly and beyond dispute is unreasonable, irrational, arbitrary or discriminatory." City of Rutland v. Keiffer, 124 Vt. 357, 367 (1964). We are directed to interpret zoning ordinances according to the general rules of statutory construction and in accordance with their plain meaning, Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 525 (1999).

Although the Act lacks specific authorization for master plans, 24 V.S.A. § 4407 provides in general terms that "[a]ny municipality may adopt zoning regulations that may include, but shall not be limited to, any of the following provisions: . . ." Id. (emphasis added). We interpret this provision as allowing for the regulation of PUDs, while not specifically forbidding the use of master plans. 24 V.S.A. § 4407(12).

The Act also specifically allows the modification of zoning regulations to approve subdivision plats in a PUD. 24 V.S.A. § 4407(12) (2003). While the local discretion is not unlimited, we conclude that it is broad enough to authorize the use of master plans. On this specific point, we find persuasive the City's argument that significant developments, such as VNCC, must provide their host communities with an overview of the proposed project, so as to afford the municipality an opportunity to consider the future planning it may be required to address.

Appellants' argument that the City's LDRs are invalid because "the Master Plan Ordinance requires that the applicant commit itself to uses to be placed on the portions of its property it does not presently intend to develop to the degree necessary to identify the impacts [of] . . . that possible future use," overlooks the flexibility inherent in the Master Plan Ordinance. Appellants' Mot. for Summ. J., at 9. Section 15.07(C)(3)(e)(xii) explicitly authorizes applicants to apply for waivers from the required aspects of the master plan application. There is no need for Appellants to "speculate" as to the uses of their undeveloped and unsold parcels. Rather, Appellants could request a waiver from the provisions of the Master Plan Ordinance while presenting a comprehensive overview of the entire PUD. Regardless, the Master Plan Ordinance is valid under the Act.

Lastly, Appellants contend that they have a vested right to have their proposals considered under the City's prior zoning ordinance that did not require master plan review. Appellants submitted their "Application[s] for Subdivision Sketch Plan Review" for the Old Schoolhouse and Water Tower neighborhoods and Residential Parcel 3 before the City noticed a public hearing on their new LDRs on March 8, 2003. Appellants did not file their "Application[s] for Preliminary Subdivision Plat Review" for both the Old Schoolhouse Road and Water Tower neighborhoods until after publication of the notice. City's Ex. D, E, L, M; see also City's Ex. F (showing the City's log that records the receipt of various applications). Appellants did not file an Application for Preliminary Subdivision Plat Review for Residential Parcel 3 until after they filed their master plan application.

Precedent holds that under 24 V.S.A. § 4443(d), "if a party files an application with a town after the town has given notice of its intent to amend its zoning laws, the town shall review such an application under the proposed zoning laws." In re Champlain Oil Co., 2004 VT 44, ¶ 11, 176 Vt. 458, 461. "In Vermont, rights to review under existing regulations vest when a 'proper' application is filed." Id. (citing Smith v. Winhall Planning Comm'n, 140 Vt. 178, 181–82 (1981)) (emphasis added).

Thus, the issue is whether Appellants' "Application[s] for Subdivision Sketch Plan Review" constituted a "proper" application, which would grant Appellants a vested right to have their applications considered under the pre-amendment and pre-Master Plan Ordinance bylaws. Because we find that Appellants' sketch plan filings are different from their applications to amend the PUD, we conclude that Appellants do not have a vested right to have their applications considered under the pre-amendment bylaws. See In re Taft Corners Assoc., Inc., 171 Vt. 135, 139-143 (2000). Applicants do not have a vested right to have their PUD amendment reviewed under the old zoning ordinance. The DRB was therefore within its authority to require that Appellants submit a master plan application in connection with their application to amend their PUD.

Both the Vermont Supreme Court's holding in Champlain Oil and a plain reading of § 201 of the City's zoning bylaw, in effect prior to the May 8, 2003 notice of public hearing, clearly indicate that a sketch plan is for preliminary dialogue and categorization. City's Ex. A, § 201. A sketch plan is not part of a proper subdivision or PUD application which would lead to a vested right. The section reads, "For the purpose of classification and preliminary discussion,

any subdivider of land shall, <u>prior to submitting an application for subdivision approval</u>, submit to the Administrative Officer . . . a Sketch Plan of the proposed subdivision." <u>Id</u>. (emphasis added). A "sketch plan application could not vest a right to consideration under the then-existing zoning laws for subsequent final site plan approval or a zoning permit application. Rights vested under a preliminary application do not extend to subsequent applications of a more detailed nature." <u>Champlain Oil</u>, 2004 VT 44, ¶ 17. Thus, Appellants' sketch plans do not give rise to a vested right to develop the three neighborhoods at issue.

Because Appellants' "Application[s] for Preliminary Subdivision Plat Review" were not filed until after the notice of public hearing on the new LDRs, their applications to modify the VNCC PUD require a Master Plan in accordance with the new LDRs and the requirement of 24 V.S.A. § 4443(d).

Accordingly, based on the foregoing, Appellants' Motion for Summary Judgment is hereby **DENIED** as to Questions 1, 2, and 3 of Appellants' Statement of Questions. An in-person conference at the Chittenden District Courthouse is set for August 25th at 2:30 p.m. (see enclosed notice) to discuss how this matter may now be scheduled, so as to progress to a resolution on the merits.


Done at Berlin, Vermont, this 11th day of August, 2005


_____
Thomas S. Durkin, Environmental Judge