**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

|                          |   |                        |
|--------------------------|---|------------------------|
|                          | } |                        |
| Appeal of Baker and Johns | } | Docket No. 200-10-04 Vtec |
|                          | } |                        |

## Decision and Order on Cross-Motions for Summary Judgment

Appellants Patricia Baker and Yvonne Johns appealed from a decision of the Town of Middlebury Planning Commission (Planning Commission), approving Appellee-Applicant Co-operative Insurance Companies' (Co-operative) application for a two-lot subdivision. Both Co-operative and Appellants have filed motions for summary judgment. Co-operative is represented by Willem Jewett, Esq.; Appellants are represented by James W. Runcie, Esq.; the Town has entered an appearance and is represented by Karl W. Neuse, Esq.

### Factual Background

1. Co-operative owns an 80.3-acre parcel of property (the 80± acre parcel) north of Colonial Drive in Middlebury. This parcel is the subject of Co-operative's subdivision application.

2. Co-operative also owns land within the Chipman Hill Estates Planned Unit Development (the PUD). Co-operative's PUD lands abut the 80± acre parcel to the south and include Co-operative's offices, as well as 6 PUD lots numbered 7, 8, 9, 10, 11, and 11a. Lots 7-11a are located between Colonial Drive and the 80± acre parcel.

3. Appellants' property (purchased from Marsden on June 30, 2004) is between Colonial Drive and the southerly boundary of the 80-acre parcel, and abuts Lot 7 to its west.

4. Co-operative submitted a subdivision application to the Planning Commission seeking to subdivide the 80± acre parcel into two parcels: Lot A, containing 38.3± acres and Lot B, containing 42± acres. Co-operative intends to sell Lot A for residential development and retain Lot B for agricultural use.

5. Proposed access to Lots A and B is by right-of-way from Colonial Drive, northerly over one of its PUD lots, and onto Lot B, then turning westerly across the southwesterly corner of Lot B to the southeasterly corner of Lot A.

6. On May 10, 2004, Co-operative submitted a subdivision application to the Planning Commission. A public hearing before the Planning Commission was noticed for June 14, 2004. The notice stated that the Planning Commission was to consider "[t]he application by Cooperative Insurance Companies to subdivide their 80 acre parcel on Washington Street Extension into two parcels."

7. After discussing Co-operative's application on June 14, 2004, the Planning Commission voted to recess the hearing and reconvene on July 12, 2004.

8. At the July 12, 2004 Planning Commission hearing, several neighbors, including the Appellants here, expressed concern over the originally proposed subdivision access. Many questions were raised about the proposed future development of Lot A. Following a brief discussion on the application, the Planning Commission voted to again recess the hearing.

9. At some point between the June 14 and July 12 hearings, Co-operative held a separate meeting to which interested person were invited.

10. The continued public hearing before the Planning Commission was warned for August 9, 2004. The Notice for this hearing stated that its purpose was for the "[r]econvened hearing for the Co-operative Insurance Companies subdivision on Washington Street Extension." At the August 9th hearing, Co-operative presented three alternative access proposals for their two lot subdivision. The alternative accesses appeared to be offered in response to neighbors' concerns about the traffic the future development of Lot A may generate.

11. It was noted at the hearings that Co-operative's proposed access for their two lot subdivision would cross over at least one of Co-operative's PUD lots. In the course of this discussion, it was suggested that Co-operative's revised access proposals would require an amendment to the 1979 PUD approval, and would therefore require Planning Commission review.

12. The parties dispute the extent to which the issue of PUD modification should have been separately noticed and whether a separate hearing should have been held by the Planning Commission.

13. The Planning Commission approved the subdivision application[1] at the conclusion of its August 9, 2004 hearing.

---

[1] The August 9, 2004 Planning Commission minutes reflect that the first motion considered was "for approval of the subdivision with option #2 as access." Such a motion appeared proper, as it was upon the application properly

14.  Appellants appealed the decision of the Planning Commission to this Court and filed a Statement of Questions, providing nine questions for appeal.

### Discussion

On March 29, 2005, the Court issued a Decision and Order dismissing questions 1, 3, 4, and 5 of Appellants' Statement of Questions (Questions), leaving questions 2, 6, 7, 8, and 9 to be addressed by the Court through further pretrial motions or a merits hearing.  Co-operative filed a supplemental memorandum to renew its request for summary judgment on the remaining Questions.  Appellants filed their own Motion for Summary Judgment, requesting the Court to remand this matter to the Middlebury Planning Commission for consideration of the modification to the PUD.  The Town filed a memorandum in opposition to Appellants' request for remand.

The primary issue posed by the pending motions and the remaining Questions concern the propriety of the Planning Commission's amendment of the PUD, as part of the Planning Commission's approval of Co-operative's subdivision application.  Co-operative argues in support of summary judgment that the existing PUD was lawfully modified pursuant to 24 V.S.A. § 4462 and the Town's Zoning Ordinance.  Appellants argue that the existing PUD was unlawfully modified by virtue of the fact that such a modification was not properly warned for public hearing.  The Town contends in opposition to Appellants' request for remand that the existing PUD was properly modified under 24 V.S.A. § 4412(3).

Under the Town's Zoning Ordinance, "any substantial change to a PUD shall require a public hearing and approval of the Planning Commission."  See § 550.IV of the Zoning Ordinance.  The access to Co-operative's proposed subdivision approved by the Planning Commission is by right-of-way from Colonial Drive over PUD Lot 8, with PUD Lot 7 to become a developable house lot.[2]  The access ultimately approved by the Planning Commission was

---

warned in connection with the Commission's hearings on Co-operative's subdivision application.  The motion was then amended to be for "approval of the subdivision with option #2 as access <u>with Lot 7 deemed as a building lot."</u> (Emphasis added).  This addition to the pending motion was presumably at the request of Co-operative's attending representative, and presumably because the proposed access had been moved from Lot 7 in Co-operative's revised access options.  However, this amendment caused the Commission to act upon a request—an amendment to the PUD—that had never been properly noticed.

[2]  Whether the Planning Commission decision actually changed the permitted character of Lot 7 is of some question.  The Town asserts that "the Planning Commission <u>gratuitously</u> stated that the said PUD was modified 'to create Lot #7 as a future house lot as earlier platted,' [but that] the Planning Commission further indicated that the 'conditions of the PUD shall remain in effect.'"  Town's

not the access proposed in Co-operative's original application of May 10, 2004, and initially discussed at the Planning Commission's first hearing of June 14, 2004. In fact, the access that ultimately received Planning Commission approval was one of three options that Co-operative's representatives proposed in the subsequent hearings. Those three options appeared to be made in response to neighbors' concerns, including the Appellants here, about access for the future development on Lot A.[3] Because of the particular emphasis the parties have placed on the question of whether it was proper for the Planning Commission to amend the PUD in these subdivision proceedings, and whether it would be proper for this Court to render a similar decision in this appeal, we address that question first.

It is well settled in Vermont that "[t]he reach of the [environmental court] in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader." In re Torres, 154 Vt. 233, 235 (1990). Furthermore, the Environmental Court "is limited to consideration of the matters properly warned before the local board," In re Maple Tree Place, 156 Vt. 494, 500 (1991); see also Torres, 154 Vt. at 235, because "notice and hearing requirements on application to a [planning commission] are mandatory and jurisdictional, and failure to adhere to these requirements renders the action taken null and void." Torres, 153 Vt. at 236.

In the present case, the warnings for the June 14 and August 9 public hearings only referred to Co-operative's subdivision application; a public hearing on the modification to the existing PUD was not warned at any time. Therefore, the modification to the PUD is null and void. See Torres, 153 Vt. at 236.

Co-operative argues that Torres is distinguishable from the present case because that case involved two separate zoning applications, while in the present case the Planning Commission had continuing jurisdiction over the PUD and is directed by the Town's Zoning Ordinance and the Planning and Development Act to conduct subdivision and PUD review concurrently. See Attach. to Co-operative's Mot. to Dismiss, Ex. 7 (the Chipman Hills Estates 1979 PUD approval); § 550.III.2 of the Zoning Ordinance (directing the Planning Commission to conduct subdivision and PUD reviews concurrently); 24 V.S.A. § 4462 ("[i]f more than one type of

Mem. in Opp'n to Appellants' Mot. for Summ. J., filed June 21, 2005, at 2 (citing Applicant's Ex. 9) (emphasis added).

[3] As is noted later in this Decision, the impacts of any future development of Lot A, including a proposal of up to 80 new homes, was not properly before the Planning Commission in this two lot subdivision application and is not properly before this Court now.

review is required for a project, the reviews, to the extent feasible, shall be conducted concurrently).

Notwithstanding the accuracy of Co-operative's reading of the Zoning Ordinance, the Act and the approved PUD, the Town remains obligated under Torres to provide notice of the Planning Commission hearings on applications under consideration for some action. Because modification of both the PUD and subdivision would require two separate and distinct applications and reviews, notice is required for each, even if conducted concurrently. This point is especially applicable in this case because while Appellants had actual notice of the PUD modification by way of their participation in the public hearings on Co-operative's subdivision application, the record does not show that all persons who would have been interested and entitled to notice actually were notified of the Planning Commission's intent to review and potentially modify the PUD.

The Town contends that the modification of the PUD was proper under 24 V.S.A. § 4412(3), which addresses the statutory requirement that access be provided by a permanent right-of-way or easement when land development is proposed on lots that do not have frontage on a public road or public waters. While § 4412(3) does state that approvals "shall be pursuant to subdivision bylaws," the Court is not persuaded that this section abrogates the necessity for notice of the modification of the PUD.

What is clear is that the PUD could not be lawfully modified in the proceedings below, or in the Court's proceedings on this appeal, because there was no notice. As made clear by our Supreme Court in Torres, the notice provided for in the proceedings below establishes the parameters of this Court's jurisdiction in a subsequent appeal. The remaining question is whether the record in this de novo appeal allows for this Court's continued analysis of Applicant's subdivision application. We believe that it does.

We recognize the very legitimate concerns that neighbors would have when they learn of a development being proposed near their homes that is as substantial as suggested here by the discussion at the Planning Commission's first hearing on June 14, 2004. Such concerns can grow even more worrisome when questions about the specific nature of the development could not be answered.

Land use review, particularly by municipal panels, can sometimes appear unnecessarily confusing and complex to all parties, applicants included. While the neighbors' concerns here

appear legitimate, we must limit our focus to the questions that are properly presented by the pending application. When reviewing subdivision applications in particular, we have been cautioned by our Supreme Court "that subdivision review is not intended to police prospective uses of the subdivided lots." In re Taft Corners Assocs., 171 Vt. 135, 141 (1991).

Here, all that was properly before the Planning Commission, and now on appeal to this Court, is a two lot subdivision of Applicant's 80± acre parcel of land. The questions concerning the possible future development of one or both of the subdivided lots are legitimate, but not relevant in a proceeding that only has before it the question of whether the proposed two lot subdivision meets the applicable municipal regulations and state statutes.[4] We therefore turn our analysis to whether the undisputed evidence shows that those regulatory requirements have been met.

It appears undisputed from the record here that Applicants' proposed subdivision does not run afoul of the Town Subdivision Regulations, particularly Definitions §§ 302(15) and 302(16) and § 606 concerning minor and major subdivisions, with exception to the question of access. Let us defer the access issue for a moment.

In reaching our conclusion that the facts material to the Town subdivision provisions (other than access) have been met, we have remained solely focused on the proposals contained in the pending two lot subdivision application: one lot will be retained and will continue in agricultural use, the other lot will remain undeveloped until approved for a future development. Any future development of Lot A must be the subject of a later application that would need to be properly noticed and reviewed by the Planning Commission.

Pursuant to 24 V.S.A. § 4412(3), a municipal panel (and on appeal, this Court) is obligated to determine whether a "permitted right of way or easement" exists to serve land that is proposed for development, when the land does not have "frontage on, or access to, public roads or public waters." Id. The last access the Planning Commission approved was over other lands owned by Co-operative.[5]

_____

[4] 24 V.S.A. § 4418 allows municipalities to "regulate the division of a . . . parcel of land into two or more lots or other division of land for sale, development or lease." (Emphasis added). The subdivision at issue here appears to be solely for the purpose of creating Lot A, so that it may be sold off by Co-operative. Development of Lot A is not the subject of the pending subdivision application.

[5] The proposed accesses are often referred to as a right of way "easement," although the use of this legal term may not be appropriate, given that the land over which the right of way passes, while a separate set of lots, is also owned by Applicant. "Easement" is not usually the term used when the servient and dominant estates are owned by the same entity.

The access last approved by the Planning Commission is across PUD Lot 8 and the new Lot B. That access was one of three alternatives Co-operative proposed to the Planning Commission during its last hearings. It is unclear from the record whether these three alternatives included the access Co-operative first proposed in its initial application, or whether that access would have required modification or amendment to the PUD. Lastly, no party has suggested in their Statement of Material Facts that the three proposed accesses are the only access options for this two lot subdivision that could be submitted in this de novo proceeding. Thus, material facts are uncertain, thereby warranting a merits hearing.

Accordingly, and based on the foregoing, Co-operative's motion for summary judgment is GRANTED as to all applicable Town subdivision regulations, but is denied as to the access question mandated by 24 V.S.A. § 4412(3). On the issue of permittable access, we find that alternate accesses available here give rise to facts being in dispute, thereby necessitating a hearing on the merits.[6]

The Court will conduct a telephone conference with the parties pursuant to the Notice which accompanies this Decision. The parties should be prepared to discuss the following issues at this conference:

1. Possible trial dates, including in December, 2005, and January, 2006;

2. Additional Discovery that may be needed in light of this Decision;

3. Whether the parties wish to stipulate to stay these proceedings to allow for an application to be filed and addressed by the Planning Commission on the sole issue of amendment to the Chipman Hill Estates PUD for the limited purpose of providing access for this two lot subdivision; and

4. Such other issues the parties believe are relevant to the remaining issues in this proceeding.

All other pending motions are DENIED. Nothing contained in this Decision is to be regarded as authorizing an amendment to the Chipman Hill Estates PUD.


Done at Berlin, Vermont, this 27th day of September, 2005.

---

[6] Our procedural conclusion here presumes that one or more of the access options Co-operative may present at a hearing on the merits would not require this Court to consider an amendment to the PUD in these proceedings.

_____
Thomas Durkin, Environmental Judge