STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Dover Watch Timeshare Project | } | Docket No. 103-5-06 Vtec |
| (Appeal of Dover Watch Owners Association) | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

Appellant Dover Watch Owners Association, Inc., (Appellant Association) appealed from a decision of the Development Review Board (DRB) of the Town of Dover dated April 20, 2006, upholding the Zoning Administrator's decision that a municipal zoning permit is required for the work Appellant Association wishes to complete on the time share (interval ownership) project known as Dover Watch. Appellant Association, involving more than 300 purchasers of time shares in the project, is represented by Eric J. Anderson, Esq.; the Town is represented by Joseph S. McLean, Esq.

Both parties have moved for summary judgment. The following facts are undisputed[1] unless otherwise noted.

Appellant Association seeks to complete construction on one partially-completed building and to construct additional[2] four-unit buildings in a time share (interval

_____

[1] It has been unduly difficult for the Court to determine the present scope of the project itself, as well as to determine the scope of the project that had been approved as of the adoption of zoning in Dover in 1988, because the parties have provided only the most recent of the many Act 250 permits or permit amendments applicable to this project, and have provided none of the permit applications. The one Act 250 permit decision supplied by the parties, the District 2 Environmental Commission's Memorandum of Decision in #2W0543-R1N(Altered), issued on January 5, 2006, attached to the parties' Stipulated Facts as Exhibit D, assumes knowledge of the prior history of the permit and the underlying facts not provided to this Court.

[2] The Court cannot determine from the materials supplied whether Appellant Association wishes to construct a total of 52 units in 13 four-unit residential buildings,

1

ownership) project now known as Dover Watch, on property located northerly of Country Club Road in West Dover. The project was started by Appellant Association's predecessor-in-interest, Eugene Ettlinger, and/or by corporations in which he had an interest. It appears that Appellant Dover Watch Owners Association is in continued litigation[3] with one of those corporations,"Dover Watch at Mt. Snow, Ltd.," over ownership of all or part of the project property.

The parties have not provided any of the Act 250[4] decisions or permits applicable to the property other than the most recent one issued in January 2006, ruling on a motion to alter regarding the scope of the –R1N decision which had been issued in November of 2005. Accordingly, any of the permit history of this project as described in this decision derives from that decision or from the one Environmental Board decision on the project[5] available from the Natural Resources Board website.

Mr. Eugene Ettlinger first applied to the District Commission in early 1982 for an Act 250 permit to construct 96 two-bedroom residential units on 16.2 acres of land. After test wells had been dug on an adjacent 53.8-acre parcel, which were planned to provide a water

including the existing buildings, or to construct a total of 88 units in 22 four-unit residential buildings, including the existing buildings, nor which non-residential buildings (such as a pool building and an administration building) are included in Appellant Association's concept of the project.

[3] The Court recognizes the parties' frustration stemming from the delays in the Dover Watch time share project that may be related to this litigation; however, all that is before this Court in this appeal is the municipal zoning status of the project.

[4] The Act 250 permit status of the project is relevant to the provisions of the Zoning Bylaw related to whether and when a project may be grandfathered.

[5] In re: Eugene Ettlinger (Tara Interval), Land Use Permit #2W0543-EB, Findings of Fact, Concl. of Law and Order (Vt. Envtl. Bd., Dec. 8, 1982), available at http://www.nrb.state.vt.us/lup/decisions.htm

supply for the proposed project, a Vermont corporation controlled by Mr. Ettlinger (Environmental Consultants, Inc.) purchased the adjacent 53.8-acre parcel. However, neither the public notice of the Act 250 permit proceedings nor the permit application was amended to include the additional involved land. In September of 1982, the District Commission issued Act 250 Permit #2W0543 to Mr. Ettlinger to construct the 52 two-bedroom units in 13 buildings, and gave "conceptual" approval for the entire project, described as 88 two-bedroom units in 22 buildings. However, due to the lack of notice of the additional 53.8-acre parcel of "involved land," a neighboring landowner appealed to the Environmental Board, which vacated the permit and remanded the application due to that lack of notice.

Thus, the first valid Act 250 Permit for the project was #2W0543–R1, issued by the District Commission in early 1983 (the 1983 Act 250 Permit) for the construction of 13 four-unit buildings containing 52 two-bedroom units, as well as the conversion of what seems to have been an existing 40' by 40' building on the property for use as an "administration building." The parties have not supplied sufficient information to determine whether this original Act 250 Permit contemplated the buildings on a 16.2-acre parcel, with some provision for water supply on the adjacent parcel of involved land, or whether the project property ever merged to consist of a 70-acre parcel of land. Nor can the Court determine from the documents that have been supplied whether the 1983 Act 250 Permit discussed "conceptual" approval for any additional buildings beyond the initial thirteen.

By some time in the 1980s, three of the thirteen four-unit buildings authorized by Act 250 Permit #2W0543–R1 were completed. The parties have not provided any of the applications to or decisions of the District Commission prior to the –R1N decision issued in January of 2006; that decision outlines the permitting history of the project as it pertained to the issues in the then-motion to alter, and does not mention the –R1B, –R1C, –R1D, –R1G, or –R1*I* amendments. However, it appears from the description of the Act 250

3

permitting history in that decision that on November 10, 1988, the –R1E Act 250 Permit extended the construction completion date to October 1, 1990 for the entire project, the last extension decision that addressed the entire project as originally permitted.  On May 31, 1988,[6] the – R1F Act 250 Permit first approved the construction of the pool building; it was to be completed by October 15, 1989.

When the project obtained the 1983 Act 250 Permit, the Town of Dover had not yet adopted a zoning bylaw.  It may have adopted an interim bylaw in April[7] of 1988; in any event it adopted a zoning bylaw effective on November 8, 1988 (the 1998 Zoning Bylaw[8]).  The project property appears to be located[9] in the Valley Walls (District C) zoning district.  In this district, under the 1988 Zoning Bylaw, a multiple-unit residential project was a permitted use if applied for as a Planned Residential Development (PRD) subject to the requirements of Article 6 of the Zoning Bylaw.  §330.  However, for any Planned Residential Development, §620(B) limited its overall density to the number of residential units that would be permitted if the land were subdivided into lots in accordance with the zoning requirements for the particular zoning district.  If the project had been a PRD on 16

[6] If the -R1E Act 250 Permit date of November 10, 1988 is correct, then this date for the subsequent -R1F Act 250 Permit is probably May of 1989 rather than 1988. This discrepancy may easily be checked from the records of the District Commission, but has not been provided to the Court in connection with the present motions.

[7] This is suggested by the fact that April 1988 rather than (or as well as) November 1988 dates appear in the grandfathering-related sections of the Zoning Bylaw.

[8] The Zoning Bylaw was subsequently amended in 1992, 1993, 1994 and in 1996; however, neither party suggests these later amendments were pertinent to the issues in this appeal.

[9] The parties have not provided any indication as to the zoning district of the property, except to argue that the project would not now qualify for a zoning permit due to the one-unit-per-five-acres density required in the district; the Valley Walls (District C) zoning district is the only one with a five-acre density, which is  the same in the 1988 and the 2005 Zoning Bylaw.

4

acres, it would have been limited to three residential units (or, if on 70 acres, it would have been limited to fourteen residential units).

Section 202 of the 1988 Zoning Bylaw provided that any "construction started prior to April 26, 1988 may be completed as long as it is a permitted use within the District without obtaining a Zoning Permit," provided that the property owner complies with all other applicable permits and files a site plan showing the location of the proposed structures, a sketch showing their height, a statement of the proposed use, and proof that construction was started prior to November[10] 1988. Because the 1988 Zoning Bylaw would not have allowed the proposed 52-unit project as a permitted use (that is, as a PRD), the original project would not have qualified for this exemption.

Section 150 of the 1988 Zoning Bylaw provided that if "modifications are to be made to a valid Act 250 . . . permit which was issued before April 26, 1988, which change the design or specification of the original project, a zoning permit shall be required if any of the following criteria are met." The six criteria in §150 cover circumstances in which the changes to the project (1) reduce any distance to the nearest road, property boundary or stream; (2) increase the height of any building or structure; (3) increase the footprint of a structure; (4) increase the square footage of a structure; (5) create additional dwelling or commercial units, buildings or accessory structures; or (6) create additional lots.

Construction on a fourth project building known as "Quad-IV" must have been commenced and partially completed at some time prior to March of 1993,[11] as on March 15, 1993, the –R1H Act 250 Permit extended the construction completion date for the Quad IV building to October 1, 1995. In the application for that extension the then-applicant stated

----

[10] See footnote 7, above.

[11] If the parties know when that building was commenced in relation to the April 26, 1988 date used in §150 of the 1988 Zoning Bylaw, they have not provided that information to the Court in connection with the present motions.

that the Quad IV building "is standing; exterior covered; roof, windows and doors in place" and that "90% of the firewall" between the four townhouses was in place. On September 13, 1993, the –R1J Act 250 Permit extended the construction completion date for Buildings 5 and 6 to October 1, 1995; however, there is no indication that construction on either of these buildings was commenced prior to the expiration of the extended 1995 date or that any further extension was sought for either of these buildings.

On November 5, 1996, the –R1K Act 250 Permit extended the construction completion date for the Quad IV building to October 1, 2000. The –R1L Act 250 Permit extended the construction completion date for the pool building to October 15, 2000. On April 23, 2001, the –R1M Act 250 Permit extended the construction completion date for the both the Quad IV building and the pool building to October 15, 2005.

On November 22, 2005, the –R1N(Altered) Act 250 Permit extended the construction completion dates for the Quad IV building and the pool building to October 15, 2008. On January 5, 2006, the District Commission denied Appellant Association's motion further to alter that decision, which appears to have requested a ruling that the –R1N extension application was meant to apply to "the original 52-unit project."

The total possible number of unit weeks for the sixteen units in the four completed (or partially-completed) buildings is 832 (computed as sixteen units x 52 weeks/year). Appellant Association acquired 220 of these unit weeks of the time share project in 2004 through a foreclosure action in Windham Superior Court against the corporation, Dover Watch at Mt. Snow, Ltd.[12] The partially-completed Quad-IV building is reported by

[12] The action was originally filed against Mr. Ettlinger as well as the corporation, but in the Judgment, Order and Decree of Foreclosure (Revised) entered by the Windham Superior Court in Docket No. 381-8-03 WmC on January 8, 2004, Mr. Ettlinger's name was deleted from the caption and the text. The minutes of the DRB meeting as described in the DRB decision on appeal reflect some disagreement between Appellant Association's attorney and the corporation's attorney as to the ownership of the undeveloped land.

Appellant Association to be in a state of considerable disrepair; nevertheless, "dozens" of time share unit weeks have been sold for units in that building.

Appellant Association seeks to complete the time share project as originally proposed, although the Court cannot determine whether the project which Appellant Association seeks to complete consists of a total of 52 units in 13 buildings on a 16.2 parcel of land, or a total of 96 units (twenty additional four-unit buildings), or whether it is on a total of 70 acres of land.

Effective October 25, 2005,[13] the Town again amended its Zoning Bylaw. The 2005 Bylaw amendments eliminated §§150 and 202. Section 130 of the 2005 Bylaw provides that the Zoning Bylaw "is not intended to repeal, annul or in any way impair any State or local regulations, [or] valid permits (including Act 250 and existing subdivisions as defined in 10 V.S.A. Section 6081) previously adopted or issued."

In the present proceeding Appellant Association asked the District Commission to alter the discussion section of its November 22, 2005 decision in -R1N (Altered) "to recognize that Applicant needs to have the completion date for the entire project extended and not simply the completion date for Quad IV and the pool building." District 2 Environmental Commission Memorandum of Decision in #2W0543-R1N(Altered) (January 5, 2006) at p.2. In its January 5, 2006 Memorandum of Decision, the District Commission concluded that Appellant Association had not abandoned the Act 250 permit and permit amendments for the partially completed "Quad-IV" building or the pool building; that completion of those two buildings does not require further review under Act 250; that the remainder of the project requires a new Act 250 application and review under the Act 250 criteria, because the last amended construction completion date has "long since" expired

---

[13] Effective July 1, 2004, 24 V.S.A. §4449(d) provided that amended zoning regulations are to be applied as of the date on which they are proposed. The date on which the 2005 Zoning Bylaw was proposed for public comment has not been provided to the Court.

and circumstances may have changed; and that, if Appellant Association wished to extend the construction completion date for the entire project, it would need to file a new Act 250 application addressing changes in circumstances, changes in the proposed project, and the Act 250 criteria. That decision stated that the "only portions of the project [other than the three completed buildings] which still have a valid, unexpired construction completion date are the pool building and Building Quad IV (Units 13 – 16)."

On February 5, 2006, Appellant Association's architect wrote to the Zoning Administrator to request a letter confirming that the property "as approved" in the 1983 Act 250 Permit is "grandfathered" under the Zoning Bylaw. The Zoning Administrator's response stated that "the Dover Watch project is not 'grandfathered' under the Town of Dover's Zoning Bylaw in a manner that would exempt it from obtaining local zoning approvals for any new land development." Appellant Association appealed the Zoning Administrator's decision to the DRB, which issued a decision on April 20, 2006 upholding the Zoning Administrator's decision that a zoning permit is required. This de novo appeal followed.

Appellant Association seeks a determination that the project "as approved" by the 1983 Act 250 Permit "is still allowable" under the municipal Zoning Bylaw. At the outset, we note that any construction or development not addressed in the 1983 Act 250 permit is beyond the scope of this appeal.

As the Zoning Administrator's and DRB's decision also implicitly recognized, construction of elements of the project approved in the 1983 Act 250 permit was grandfathered for whatever construction or site work was begun before the Town's adoption of its first Zoning Bylaw in 1988, under the vested rights doctrine, and may be completed without the need for a new zoning permit unless by lapse of time it is considered to have expired or been abandoned under the Zoning Bylaw applicable at the

8

time. (See §§ 250 and 255 of the 1988 Zoning Bylaw). See, generally, discussion of vested rights doctrine in In re Jolley Associates, 2006 VT 132, and in In re Appeal of Taft Corners Associates, Inc., 171 Vt. 135, 139–144 (2000). The elements of the project in this category include the three completed buildings, assuming construction on them began before the date of the first interim Zoning Bylaw (which may be April 26, 1988) and may also include the partially completed Quad-IV building, if construction on it was begun before the applicable date.

Construction of elements of the project approved in the existing Act 250 permit, which did not require a modification of the then-existing Act 250 permit and which was begun between April 26, 1988 and the date on which the 2005 Zoning Bylaw was proposed for public comment, is also grandfathered under the terms of §150 of the prior Zoning Bylaw. It may also be completed without the need for a new zoning permit, unless by lapse of time it is considered to have expired or been abandoned. The partially completed Quad-IV building may fall within this category if construction on it was begun between the stated dates.

Construction of elements of the project which required a modification of the then-existing Act 250 permit, if that modification was applied for between April 26, 1988 and the date on which the 2005 Zoning Bylaw was proposed for public comment, needs a zoning permit under §150 of the prior Zoning Bylaw, regardless of the fact that §150 was later repealed. Construction of the pool building appears to have required a modification of the existing Act 250 permit; if that modification was sought between the stated dates (see footnote 6, above), then the pool building may fall within this category and will require a zoning permit.

Finally, construction of any element of the project which was not begun prior to the date on which the 2005 zoning bylaw was proposed, but which was permitted under a then-valid Act 250 permit, is not grandfathered, but must be analyzed under § 130 of the

9

2005 Bylaw. It will require a zoning permit even if it has a valid Act 250 permit, and, if it is proposed as a PRD, may also require conditional use approval and site plan approval under the current Zoning Bylaw.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Town's Motion for Summary Judgment is GRANTED in PART, in that Appellant Association must obtain local zoning approval for the construction of any structure which was not begun prior to the date on which the 2005 zoning bylaw was proposed and for the construction of any structure which required a modification of the then-existing Act 250 permit, if that modification was sought after April 26, 1988. Appellant Association's Motion for Summary Judgment is GRANTED in PART, in that local zoning approval is not necessary for the completion of any structure upon which construction was begun before April 26, 1988, or for any construction or development approved in the Act 250 permit which was begun between the stated dates that did not require a modification of the existing Act 250 permit.

A telephone conference has been scheduled (see enclosed notice) to discuss whether any issues remain for a hearing on the merits of this appeal, and to discuss whether any of the information not provided to the Court is nevertheless undisputed.

Done at Berlin, Vermont, this 19th day of April, 2007.

_____
Merideth Wright
Environmental Judge