# In re Appeal of Taft Corners Associates, Inc.

[758 A.2d 804]

No. 99-431

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed August 11, 2000

*Stewart H. McConaughy* and *Norman Williams* of *Gravel and Shea*, Burlington, for Appellant.

*Paul S. Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Appellee.

**Dooley, J.** Taft Corners Associates (TCA) appeals from a decision of the environmental court holding that its subdivision permit from the Town of Williston does not give it a vested right to develop its subdivided lots under the provisions of a zoning ordinance in effect when the subdivision permit was issued. The issue arises because the Town has made retail uses conditional uses under interim zoning rules adopted in 1997, and, pursuant to the interim zoning rules, has denied TCA a permit to construct a retail store on one of the lots. We concur with the environmental court that TCA does not have a vested right to develop the lots under the pre-1997 zoning ordinance, and affirm its grant of partial summary judgment to the Town.

In 1983, TCA purchased two adjoining parcels, comprising 223 acres, in the Town of Williston and, thereafter, applied to the Williston Planning Commission to subdivide them into thirty-seven (now thirty-eight) lots. When asked what uses would be placed on the subdivided lots, TCA's principal answered that they would be mixed uses, "retail and light industrial that would compl[e]ment each other." The subdivision permit was granted in 1987. The TCA land was in districts in which mixed uses were permitted at the time. Thereafter, in accordance with the permit, TCA invested approximately 4.1 million dollars in infrastructure and impact fees, and over 1.5 million dollars more for professional services and related costs.

By 1991, seven commercial buildings were permitted and built in the subdivision. These had a total square footage of 250,000 feet, with 153,756 square feet devoted to industrial uses, 68,163 square feet devoted to office uses, and 29,185 square feet devoted to retail uses. From 1995 through 1998, the development activity was exclusively for retail uses. Seven more buildings were added, with a square footage in excess of 460,000 feet, to house stores for Hannaford (super market), Wal-Mart, Home Depot, Toys R Us, PetsMart, Circuit City and an "anchor" store. Each building is separate and of "box design," that is, with one story and a parking lot in front.

TCA's development plans generated opposition in the Town of Williston, and by 1990 the Town modified its town plan and was considering zoning amendments that would restrict retail development in the districts encompassing the TCA subdivision. In July 1990, TCA and the Town entered into an agreement, which for five years thereafter allowed TCA to develop eleven of its lots, totaling fewer than forty acres, for retail establishments of at least 25,000 square feet per building, and 10,000 square feet per tenant. The agreement was a compromise to accommodate TCA's position that it desired "a vested right to develop the lots in Tafts Corner Commercial Park for those uses which were permitted at the time of the subdivision approval" and the Town's position that it desired "to have the lots in Taft Corners Commercial Park developed for those uses contemplated under the new plan and proposed new zoning regulations." The agreement expired, and no further agreement replaced it.

In November 1997, the Town selectboard adopted an interim zoning amendment making retail uses conditional uses in the districts in which the TCA subdivision is located. Under the amendment, retail uses can be permitted only by vote of the Town selectboard, based on conditional-use criteria contained in the amendment. According to the selectboard, the interim zoning amendment was adopted "to allow breathing room to address the enormous impacts the scope and pace of this retail development was having on Williston."

Although TCA took the position it was not bound by the interim zoning regulation because it had a vested right to develop under the zoning regime in place when it received its subdivision permit, it sought conditional-use approval from the selectboard for a 31,940 square foot retail building that would fill in the space between two existing buildings on lots 27 and 29, and for a 30,020 square foot retail building on lot 26. The selectboard denied conditional-use approval for both buildings, finding that they "would only exacerbate the very

problems sought to be addressed [by the interim zoning amendment]" and were inconsistent with the town plan and with the capacity of town services, particularly the police and fire departments.

TCA appealed to the environmental court which, on the parties' cross-motions for partial summary judgment, ruled that TCA does not have a vested right to develop its lots under the zoning ordinance in effect at the time the subdivision permit was granted. Thus, the court ruled that TCA was properly subject to the conditional-use regulation contained in the interim zoning amendment, and did not have a right to consideration of its new retail buildings as permitted uses. We granted interlocutory review of this ruling with respect to lot 26.[1] We have before us the single issue of whether TCA has a vested right to develop the lots in its subdivision under the zoning ordinance as it existed in 1987, when the subdivision permit was issued.

We start with the statutory scheme. The Vermont Planning and Development Act authorizes two major types of bylaws to regulate land development within a municipality: zoning regulations and subdivision regulations. See 24 V.S.A. § 4401(b)(1) & (2). Subdivision regulations set forth the "procedures, requirements and specifications" for the subdivision of land and the filing of plats displaying the subdivided land. *Id.* § 4401(b)(2). In this context, the subdivision of land means the division of a parcel of land into two or more parcels. See *In re Lowe*, 164 Vt. 167, 169, 666 A.2d 1178, 1179 (1995). The municipality can authorize its planning commission to "approve, modify or disapprove all plats of land."[2] 24 V.S.A. § 4401(b)(2). In addition to procedures and requirements for submission and processing of plats, subdivision regulations must provide "[s]tandards for the design and layout of streets, curbs, gutters, street lights, fire hydrants, shade trees, water, sewage and drainage facilities, public utilities and other necessary public improvements." *Id.* § 4413(a)(2). They may also provide "development standards to promote the conservation of energy or to permit the utilization of renewable energy resources or both." *Id.* § 4413(c). The planning commission

---

[1] TCA also appealed the ruling with respect to lots 27 and 29, but settled their dispute over these lots with the Town and obtained a remand for entry of an order implementing the settlement in the environmental court.

[2] By a 1995 amendment to the Vermont Planning and Development Act, a municipality may merge its zoning and planning functions into one development review board. See 24 V.S.A. § 4461. In the text, we have described the functions of the more familiar planning commissions and zoning boards of adjustment, which continue to exist in most communities.

has considerable discretion in acting on proposed plats. It can waive or vary standards which, in its judgment, are not requisite to the public health, safety or general welfare for a particular plat or plats or "are inappropriate because of inadequacy or lack of connecting facilities." *Id.* § 4413(b). The statute also allows the planning commission to condition approval of a plat on any of six conditions. For purposes of this decision only one condition is significant: "where zoning regulations are in effect, the plots shown on said plat will at least comply with the requirements thereof." *Id.* § 4417(2).

The purpose of zoning regulations is to "permit, prohibit, restrict, regulate, and determine land development." *Id.* § 4401(b)(1). Land development includes "the division of a parcel into two or more parcels, the construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or other structure, or . . . any change in the use of any building or other structure, or land, or extension of use of land." *Id.* § 4303(3). Zoning regulations may regulate: "specific uses of land"; "[d]imensions, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures"; "[a]reas and dimensions of land . . . to be occupied by uses and structures, as well as areas . . . to be left unoccupied by uses and structures"; and "[d]ensity of population and intensity of use." *Id.* § 4401(b)(1).

There is some overlap between zoning and subdivision regulation because the definition of "land development" for purposes of zoning regulation includes the division of parcels, the trigger for subdivision regulation.[3] See *In re Lowe*, 164 Vt. at 168, 666 A.2d at 1179; *Drumheller v. Shelburne Zoning Bd.*, 155 Vt. 524, 528-29, 586 A.2d 1150, 1152 (1990). A municipality may use zoning regulations to perform at least some of the functions of subdivision regulations.

In any case where a landowner is both dividing a parcel into smaller ones and developing those smaller parcels, he or she will need both a subdivision permit and a zoning permit. The subdivision permit will allow the owner to divide the land and create the infrastructure. The zoning permit will allow the landowner to develop the parcels by placing one or more structures on them. It is undisputed that TCA needed a subdivision permit to create the Tafts Corner Commercial

---

[3]There is greater overlap in planned residential and planned unit developments, in which the planning commission may vary requirements of the zoning ordinance. See 24 V.S.A. § 4407(3), (12). We do not consider the application of vested rights in such developments.

Park. It is also undisputed that TCA needs a zoning permit for each lot it develops in the park.

With this background in mind, we look to our jurisprudence on vested rights. Our leading case is *Smith v. Winhall Planning Commission*, 140 Vt. 178, 436 A.2d 760 (1981), in which a developer proposed to subdivide a tract of land into nine residential lots, each larger than one acre, but smaller than five acres. At the time, the town was proposing to adopt an amendment to its zoning ordinance to require that all residential lots be at least five acres in size. In anticipation of the amendment, the planning commission denied the subdivision permit, and the developer appealed to the trial court. In the meantime, the town adopted the zoning amendment and asserted that the new ordinance prohibited the development. This Court disagreed, adopting the minority rule "vesting rights under the then existing regulations as of the time when proper application is filed." *Id.* at 181-82, 436 A.2d at 761.

TCA argues that this case fits the holding and rationale of *Smith*. Because the holding of *Smith* was that the landowner's subdivision permit must be governed by the zoning ordinance in effect when the subdivision application was submitted, TCA argues that it also has a vested right to be governed by the zoning ordinance in effect in 1987, when it received its subdivision permit. Only this rule, it argues, protects its investment in the subdivision and produces the regulatory certainty that *Smith* sought to accomplish.

This is, however, a very different case than *Smith*. In *Smith*, the issue was whether the landowner could obtain a subdivision permit despite an adverse change in the regulatory law between the date of application and the date of decision. Here, the permit in issue is a zoning permit, not a subdivision permit, and the landowner applied for this permit *after the adverse regulatory change*. Although the landowner did receive a subdivision permit, no issue of conformance with the zoning regulation arose in that process, and the landowner was never denied the subdivision permit at any stage of the process.

We have no doubt that a subdivision application creates a vested right that the *subdivision permit* be evaluated under the regulatory law in effect at the time of the application. That is the holding of *Smith*, and it is not under debate in this case. What TCA seeks, however, is a vested right that a separate *zoning permit* will be evaluated under the regulatory law in effect at the time of the

application for the subdivision permit,[4] and not that in effect at the time of the zoning permit application. We can understand this position if the legality of the act of dividing the parcel of land necessarily depends upon a specific provision of the zoning ordinance, and that zoning ordinance provision was amended before the zoning permit was sought. Thus, if the developer in *Smith* had been awarded a subdivision permit despite the fact that his lots were undersized, but had been denied a zoning permit because of the size of the lots, he should have had a vested right to the zoning permit provided he met all other zoning requirements. See *Stucker v. Summit County*, 870 P.2d 283, 288 (Utah Ct. App. 1994) ("Some courts have recognized that the filing of a subdivision plat gives a vested right to individual lot owners as to the lots' size."). Beyond this narrow circumstance, however, we believe TCA's position represents an unwarranted and unprecedented expansion of our vested rights jurisprudence. See *L.M. Everhart Constr., Inc. v. Jefferson County Planning Comm'n*, 2 F.3d 48, 52 (4th Cir. 1993) ("no court . . . has adopted such a broad conception of vested rights").

TCA argues that vested rights jurisprudence should extend to the zoning permit process because subdivision review necessarily addressed compliance of the subdivision with the zoning ordinance and TCA disclosed how it would use the land during subdivision review. The latter assertion is, at best, an exaggeration; the former is not an accurate statement of Vermont's land use regulatory process.

The only evidence during subdivision review of expected uses within the TCA subdivision was the statement of its principal that he would "like a mixed use in there with retail and industrial that would complement each other." Since these uses were allowed by the zoning ordinance, this was little more than a statement that TCA would like to comply with the ordinance. It did not limit the uses, and no subdivision permit condition mentioned the uses to which any lot in the property would be put. See *In re Stowe Club Highlands*, 164 Vt. 272, 276, 668 A.2d 1271, 1274-75 (1995) (representations made in subdivision review not legally binding unless placed in permit conditions).

For the proposition that vested-rights jurisprudence should extend to the zoning-permit process, TCA cites the statute authorizing the

---

[4] TCA has framed its argument claiming the issuance of, and not the application for, the subdivision permit creates the vested rights. Under *Smith*, the point of vesting for purposes of the subdivision permit is the date of application. We see no reason why a different point in the process would be adopted for purposes of the zoning permit.

planning commission to require that the plat comply with zoning requirements. See 24 V.S.A. § 4417(2). Consistent with that argument, TCA submitted to the environmental court an affidavit of the former chair of the Williston Planning Commission to the effect that, during subdivision review, a commission must look at compliance with a town plan and zoning regulations so that:

> The Planning Commission would not have approved TCA's subdivision application if TCA had proposed uses which were not in conformance with the Comprehensive plan or were not permitted by the zoning regulations in effect at the time.

We do not have to decide whether a planning commission ever has the power to deny a subdivision permit because the uses proposed for it are not authorized by the zoning ordinance. It is sufficient to say that subdivision review is not intended to police prospective uses of the subdivided lots. No subdivider is required to specify what uses will be placed on the subdivided lots, and the act of subdivision does not restrict those uses. Indeed, there is no requirement that the subdivider know what uses will be placed on those lots. Consistent with the proper role of subdivision review, TCA's principal spoke only of what he would "like" for uses, and then only in the broadest and vaguest terms.

By describing a limited role for subdivision review, we do not render nugatory the power of the planning commission to require compliance with the zoning ordinance. For example, a planning commission might deny a subdivision permit because the subdivided lots would be too small to be lawfully developed within the zoning district in which they lie. Similarly, it might decide that no realistic development could comply with setback requirements or lot coverage limits in the zoning ordinance. In rendering these rulings, it would rely on its power to ensure compliance with the zoning ordinance as set out in § 4417(2).

TCA also argues that we decided vesting can extend to other permits in *In re Molgano*, 163 Vt. 25, 653 A.2d 772 (1994), an Act 250 state land-use permit case. In *Molgano*, we decided that conformance with a town plan, an Act 250 requirement, should be measured as of the start of the development process in the town for consistency of local zoning or subdivision review with Act 250 review. *Id.* at 33, 653 A.2d at 776-77; see also *In re Tafts Corners Assocs.*, 160 Vt. 583, 593-94, 632 A.2d 649, 654 (1993) (once developer obtains umbrella Act

250 permit, Environmental Board may not deny amendments on basis that development does not comply with town plan at time amendment sought, as long as it complied with town plan when umbrella permit was issued). *Molgano* was decided as a matter of construction of Act 250 with respect to conformance with the town plan. We reasoned that since on this criteria Act 250 was reviewing conformance with local requirements, it should be in sync with local regulatory review by using the same version of the plan under which such local review was conducted. *Molgano*, 163 Vt. at 32, 653 A.2d at 776. We do not believe that the policy that must apply to parallel state (Act 250) and local (subdivision) review should necessarily govern the distinct and separate local review processes of subdivision permitting and zoning permitting.

Indeed, if there is an analogous situation in Act 250 review, it is shown by *In re Ross*, 151 Vt. 54, 557 A.2d 490 (1989), in which the landowner submitted a general and sketchy Act 250 application solely to protect itself against an amendment to the town plan that would set limits on the density of development below those acceptable to the landowner. When the original application was denied as incomplete and the town amended its plan to reduce the allowable development density, the landowner submitted a complete application at a higher density claiming a vested right because of the earlier application. We upheld the Environmental Board's denial of the application, holding that no rights vested under a proposal to develop with "inadequate specificity." *Id.* at 56, 557 A.2d at 491.

Here, TCA seeks a vested right to develop under the zoning ordinance in force when it began subdivision review, based only on a general statement that it wanted to have mixed retail and light industrial uses. As we noted earlier, this lack of specificity was sufficient for subdivision review because that step in the development process is not intended to look at proposed uses. We do not believe it can or should be sufficient to control the regulatory process when it does reach the stage of evaluating the uses proposed by the land-owner.

Finally, TCA argues that it should have a vested right created by the subdivision permit because it invested millions of dollars in the infrastructure required by the subdivision and in professional services. We expressly adopted the "minority rule" in *Smith* to create a bright line, allowing identification of when rights vest without having to consider the extent to which the landowner has made investments and taken actions in reliance on the permit. See *Smith*, 140 Vt. at

181-82, 436 A.2d at 761. For this reason, we find irrelevant to our decision the extent to which TCA has invested in its subdivision relying on its right to develop its lots for retail uses. Even if we were to consider such evidence, we do not believe we have a sufficient showing of it here. TCA has offered evidence of its expenses, but no evidence of the profits that it has made from the existing developed lots or a comparison of its ability to earn profits if the remaining lots are developed with industrial uses.

In the absence of specific legislative direction, our vested rights principles must be based on a balance of the competing interests. The landowner's interests are not so strong that they mandate a vesting rule allowing a subdivision application or permit to vest rights with respect to a separate zoning permit. On the other hand, we find interests of the municipality and its citizens weigh heavily against such a vesting rule.

TCA's subdivision application began in 1984, the year in which its principal made the statement about intended uses in the subdivision. It applied for the zoning permit at issue here in 1998, some fourteen years later. At that time, less than half of the subdivided lots had been developed. Its legal theory would give it the right to develop the remainder of those lots at any time in the future, but under 1984 zoning rules suited to the Town's land-use goals and realities at that time. To adopt TCA's vested rights theory would strip the Town of the ability to modify its land-use policies in response to population growth and urbanization.

We agree with the analysis of the California Supreme Court in *Avco Community Developers, Inc. v. South Coast Reg'l Comm'n*, 553 P.2d 546, 554 (Cal. 1976):

> If we were to accept the premise that the construction of subdivision improvements or the zoning of the land for a planned community are sufficient to afford a developer a vested right to construct buildings on the land in accordance with the laws in effect at the time the improvements are made or the zoning enacted, there could be serious impairment of the government's right to control land use policy. . . .
>
> Thus tracts or lots in tracts which had been subdivided decades ago . . . could be free of all zoning laws enacted subsequent to the time of the subdivision improvement . . . .

We believe that the situation created by the rule TCA seeks would be unworkable. As Vermont has gone from a rural state, with large tracts of land devoted to farming, forestry or like uses, to a more urbanized state, much of its land has been subdivided to accommodate residential, commercial and industrial development. Under TCA's theory, every subdivision is subject only to the zoning laws applicable when the subdivision was sought, and not to any subsequent amendment or modification of those laws. The result would be an uncontrollable patchwork of land use rules that would defy rational policy-making or implementation.

Thus, even in the absence of *Smith*'s bright-line rule, the balance of competing policy interests would be against giving holders of subdivision permits vested rights to zoning permits under the zoning ordinance applicable when the subdivision permit was sought or obtained.

*Affirmed.*