STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket Nos. 3-1-19 Vtec
4-1-19 Vtec

| | |
|---|---|
| Capitol Plaza 2-Lot Subdivision<br>Capitol Plaza Major Site Plan | DECISION ON MOTIONS |

This coordinated appeal relates to a parking garage and associated subdivision (the Project) proposed by the City of Montpelier (the City). The City applied for subdivision and Major Site Plan approval in connection with the Project, and the Montpelier Development Review Board (DRB) approved both applications. John Russell and Les Blomberg (together, Appellants) appeal the DRB's decisions.

At a status conference on December 19, 2019, the Court directed Appellants to file an amended Statement of Questions in both dockets (3-1-19 and 4-1-19 Vtec), clarifying the regulations at issue. Appellants filed an Amended Statements of Questions, including motions to amend. The City filed in opposition with motions to strike and clarify aspects of the amended questions. Before the Court are Appellants' motions to amend their Statement of Questions in each docket, along with the City's corresponding motions to strike and clarify. The Court has taken the parties' earlier motions for summary judgment under advisement, and a separate decision will be forthcoming.

**Motions to Amend Statements of Questions**

At the Court's direction, Appellants have filed amended Statements of Questions in both subdivision and site plan appeals. Appellants ask the Court to accept their amendments pursuant to V.R.E.C.P. 5(f). While the City does not oppose the amendments in full, it asks us to prohibit or dismiss certain amended questions on the basis that they impermissibly expand the issues on appeal.

1

This Court has interpreted V.R.E.C.P. 5(f) to allow an appellant to amend the Statement of Questions.  See, e.g., Laberge Shooting Range JO, No. 96-8-16 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Jan. 4, 2017) (Walsh, J.), *aff'd*, 2018 VT 84.   As with motions to amend complaints pursuant to V.R.C.P. 15, "motions to amend a Statement of Questions are to be liberally granted, so long as they do not prejudice the other party . . . ." In re Ridgewood Estates Homeowners' Ass'n & Indian Creek Homeowners' Ass'n, No. 57-4-10 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 26, 2011) (Wright, J.); see also V.R.C.P. 15(a) (mandating that leave to amend "shall be freely given when justice so requires.").  Along with considering whether an amendment is prejudicial, we also consider whether it might be frivolous or in bad faith. B & M Realty Act 250 Application, No. 103-8-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Nov. 26, 2013) (Walsh, J.) (citations omitted), *rev'd on other grounds by* 2016 VT 114, 203 Vt. 438.

We are mindful that leave to amend should be liberally granted, and that Appellants filed amended questions at the request of the Court.  All parties agree that clarification of the issues will be beneficial.  The motions to amend are **GRANTED.** Appellants' amendments, however, represent more than mere clarification.  We address the City's concerns below in the context of its motion to strike and clarify.

### Motions to Strike and Clarify Appellant's Amended Statements of Questions

Pursuant to V.R.E.C.P. 5(f), V.R.C.P. 12(b), and V.R.C.P. 12(f), the City moves to strike or dismiss certain portions and clarify other portions of Appellant's Amended Statements of Questions.

Under V.R.C.P. 12(f), a party may move to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike should be used sparingly and should not be used to address the substance of a filing.  See Watson v. Village at Northshore I Ass'n, Inc., No. 2013-451, 2014 WL 3714662, at *2 (Vt. May 1, 2014) (unpublished mem.); In re Werner Conditional Use, No. 44-4-16 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Aug. 31, 2016) (Durkin, J.).  Thus, we consider a motion to strike questions on substantive grounds as a motion to dismiss for lack of subject matter jurisdiction under V.R.C.P. 12(b)(1).  In re Ring 85 Depot Street Conditional Use, No. 138-11-15 Vtec, slip op. at 1 n.1 (Vt. Super. Ct. Envtl. Div. July

2

6, 2016) (Walsh, J.); see also, e.g., In re Conlon CU Permit, No. 2-1-12 Vtec, slip op. at 1 (Vt Super Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.).

An appellant's Statement of Questions is also "subject to a motion to dismiss or clarify some or all of the questions." V.R.E.C.P. 5(f). In reviewing such a motion, the Environmental Division utilizes the standards set out in V.R.C.P. 12. See V.R.E.C.P. 5(a)(2) (providing that the Vermont Rules of Civil Procedure apply generally to this Court's proceedings); In re Union Bank, No. 7-1-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Nov. 8, 2012) (Durkin, J.). We will grant a motion to dismiss a question under V.R.C.P. 12(b)(1) if this Court lacks subject matter jurisdiction over the issues presented, and we will grant a motion under V.R.C.P. 12(b)(6) if the question fails to state a claim upon which relief can be granted. Union Bank, No. 7-1-12 Vtec at 1–2 (Nov. 8, 2012). We may require an appellant to clarify their questions under V.R.C.P. 12(e) if the questions are "so vague or ambiguous that a party cannot reasonably be required to frame a respons[e]." Id. at 2 (quoting V.R.C.P. 12(e)) (alteration in original).

## I.      Subdivision Appeal

We begin with the subdivision appeal, Docket No. 3-1-19 Vtec. The City first argues that the lengthy narrative and argument included in the Amended Statement of Questions should be stricken. Though we are reluctant to excise portions of a filing, the narrative here is "redundant [or] immaterial." See V.R.C.P. 12(f). Appellant's Amended Statement of Questions is over six pages long, and the bulk of that length consists of explanations or legal arguments. Rather than setting forth a "short, concise and plain statement" of the issues, appellants have repeated or expanded on arguments which have already been filed in connection with the pending motions for summary judgment. See In re Rivers Dev., LLC, Nos. 7-1-05 Vtec & 68-3-07 Vtec, slip op. at 14 (Vt. Envtl. Ct. Jan. 8, 2008) (Durkin, J.).

Appellants note that detailed questions can add clarity and put parties on notice of the issue. See Hinesburg Hannaford Discharge Permit, No. 68-6-17 Vtec, slip op. at 7–8 (Vt. Super. Ct. Envtl. Div. Dec. 20, 2017 (Walsh, J.) (discouraging broad questions in favor of more specificity). We agree; that was the goal in the present case. Yet the Statement of Questions is not a mechanism for arguing the substance of one's claims. See In re Conlon CU Permit, No. 2-1-12

3

Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Aug. 30, 2012) (Durkin, J.) ("[D]etailed factual and legal information that goes beyond identifying the Questions and crosses over into arguing the merits . . . is misplaced in a Statement of Questions.") (citation omitted). Here, Appellants have included many statements and legal arguments which, if they are not redundant, are immaterial to the purpose of stating the issues for trial. See V.R.C.P. 12(f); V.R.E.C.P. 5(f). The excess language is unhelpful and makes it more difficult for the Court and the parties to accurately refer to the issues. The motion to strike is therefore **GRANTED** as to legal arguments and language going to the substance of the issues.

The City also contends that Appellants' Amended Question 3 should be dismissed as it raises issues under Section 3505 of Montpelier's Unified Development Regulations (UDR) that were not raised in the original Question 3.[1] Question 3 originally asked: "Will the proposed subdivision conform to § 3505, governing Design and Configuration of Parcel Boundaries, specifically § 3505.B(1) (frontage)?" As the City points out, Appellants explicitly referenced UDR § 3505.B(1) which requires that "all lots front on a street." Appellants' Amended Question 3 removes that subsection and adds references to "§§ 3505.A(1) and (2)" which set forth general layout requirements for subdivisions.

Although subsections 3505.A(1) and (2) were not explicitly mentioned in the original Question 3, we find that they were "intrinsic" to the Question. See In re LaBerge NOV, 2016 VT 99, ¶ 15, 203 Vt. 98 ("[T]he Environmental Division may consider matters that are intrinsic to the statement of questions, even if they are not literally stated in the statement of questions."). The Court convened the December 19 status conference because it was apparent that both parties considered Appellants' questions as going beyond the specifically referenced subsections. For example, the City recognized at the conference and in prior filings that Question 3 arguably encompassed UDR § 3505 in its entirety. See, e.g., City's Motion for Summary Judgment on the Scope of Review, at 12-13 (making arguments concerning "§§ 3505.A and B," not merely § 3505.B(1)). The Court asked Appellants to clarify their questions by making these types of

---

[1] For clarity, we refer to specific questions by the numbers Appellants have assigned. The City's filings use new numbers to account for questions that have been withdrawn, but we maintain Appellants' numbering to ensure consistency between the original and Amended Statements of Questions.

intrinsic issues explicit. We also cautioned Appellants not to introduce entirely new sections of the UDR at this time, but Section 3505 has been at issue from the outset and the City has acknowledged that Question 3 was broad. The motion to dismiss Amended Question 3 is **DENIED**.

The City's next argument involves Amended Questions 1(3), 3(3), 4(1)(C), and 5(2). These amendments each raise a similar issue related to a lot known as the "Heney Lot" which is owned by two family trusts and leased by the City: whether subdivision approval should be contingent on the lot's owners accepting certain conditions. It appears that the proposed parking garage will occupy part of the Heney Lot, but this subdivision appeal concerns a separate and adjacent parcel at 100 State Street. The City contends that we lack subject matter jurisdiction to consider issues related to the Heney Lot in the subdivision appeal.

When reviewing motions to dismiss for lack of subject matter jurisdiction pursuant to V.R.C.P. 12(b)(1), we accept all uncontroverted factual allegations as true and construe them in the light most favorable to the nonmoving party. Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245. In our *de novo* review of municipal decisions, this Court sits in the shoes of the relevant municipal panel. V.R.E.C.P. 5(g); 10 V.S.A. § 8504(h); In re Feeley Constr. Permits, Nos. 4-1-10 Vtec, 5-1-10 Vtec, slip op. at 11-13 (Vt. Super. Ct. Envtl. Div. Jan. 3, 2011) (Wright, J.) (citing In re Maple Tree Place, 156 Vt. 494, 500 (1991)). The scope of the municipal panel's authority determines the scope of ours. See In re Sweet Bldg. Permit, No. 19-2-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jan. 25, 2013) (Walsh, J.) (citing In re Torres, 154 Vt. 233, 235 (1990)).

Nothing in the record before us indicates that the DRB considered the future involvement of the Heney Lot when evaluating the subdivision application. Precedent suggests that such an inquiry exceeds the authority of a municipal panel engaged in subdivision review. While the Vermont Supreme Court has not decided "whether a [municipal panel] ever has the power to deny a subdivision permit because the proposed uses for it are not authorized," it has clearly described "a limited role for subdivision review." In re Taft Corners Assocs., Inc., 171 Vt. 135, 141 (2000). As the Supreme Court has explained:

> [S]ubdivision review is not intended to police prospective uses of the subdivided
> lots. No subdivider is required to specify what uses will be placed on the

5

subdivided lots, and the act of subdivision does not restrict those uses. Indeed, there is no requirement that the subdivider know what uses will be placed on those lots.

Id. at 141. Appellants' questions regarding the Heney Lot involve a separate parcel from the land to be subdivided. The questions go beyond the scope of the subdivision application, and beyond the "limited role" of subdivision review. See id. Appellants argue that we must consider the Heney Lot because the proposed parking garage will use the lot for emergency access along with pedestrian, bicycle, and vehicle access. They are concerned that "[t]he subdivision permit would be unenforceable" against the Heney Lot. We do not see how subdivision approval for the land at 100 State Street could bind a separate property. Appellants compare this issue to that of a "necessary co-applicant" in Act 250 proceedings, where owners of "involved land" are sometimes required to join the application to ensure that permit conditions are enforceable across the entire development. See Hinesburg Hannaford CU Application, No. 129-9-12 Vtec, slip op. at 4–5 (Vt. Super. Ct. Envtl. Div. Oct. 27, 2015) (Walsh, J.). Act 250 was created to regulate land use, and the principles applied there fit the comprehensive nature of land use review. See In re Audet, 2004 VT 30, ¶ 13, 176 Vt. 617 (noting the Legislature's intent to require "review of large-scale changes in land utilization") (quotation omitted). Those principles have no bearing on subdivision approval. Appellants would have us bind adjacent landowners by examining the future use of the subdivided land and concluding that neighboring properties will be involved.

To be sure, "[t]he safety and adequacy of access roads is a matter of particular significance in the subdivision review process," and the City must show that the subdivision complies with applicable regulations. See In re Van Nostrand, 2008 VT 77, ¶ 11, 184 Vt. 557 (stating that subdivision standards should establish requirements for "streets, curbs, . . . and other necessary public improvements") (internal quotation omitted). But regulating prospective land use is not "[c]onsistent with the proper role of subdivision review." Taft Corners Assocs., Inc., 171 Vt. at 141 ("[T]he act of subdivision does not restrict [prospective] uses."). Zoning and site plan review are the appropriate mechanisms to vet uses like the proposed parking garage, regardless of which lots they may occupy. In Montpelier, the UDR sets general development standards for emergency, vehicular, and pedestrian access. See UDR § 3010 (discussing "safe and

6

efficient access"). Subdivision review, by contrast, is concerned with the parcel to be subdivided and any associated impacts, not prospective uses or development on other parcels. See Taft Corners Assocs., Inc., 171 Vt. at 141; UDR § 3501.A ("All subdivision of the land shall conform to the standards of this chapter."); UDR § 3503.A ("The land to be subdivided shall be suitable for use . . . ."); UDR § 3506.B ("The applicant shall integrate pedestrian and bicycle access into the design of the subdivision . . . ."). The proposed subdivision must comply with the applicable standards, but the Heney Lot is not part of the proposed subdivision. As such, we conclude that this Court does not have authority to place obligations on the Heney Lot through the subdivision standards. See In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in [municipal] appeals is as broad as the powers of a [municipal panel], but it is not broader."). Amended Questions 1(3), 3(3), and 5(2) are therefore **DISMISSED.** Amended Question 4(1)(C) is also **DISMISSED** to the extent it seeks to place obligations on the Heney Lot.

The City makes several additional arguments asking us to dismiss certain questions because they are outside the scope of review in this case. Ordinarily we would treat this as a motion to dismiss for lack of subject matter jurisdiction, but we decline to address the City's contentions at this time. The pending motions for summary judgment address the scope of review and whether these questions should be dismissed. Both parties submitted extensive briefing on the issues. At the December 19, 2019 status conference, the Court informed the parties that it had reached a legal conclusion on the scope of review: The Project must comply with applicable regulations, as limited by UDR § 3103. The forthcoming decision on the parties' summary judgment motions will explain that conclusion in detail and will decide which issues remain once the limitations of UDR § 3103 are applied. In the present motion, the City's assertions as to the scope of review are duplicative. The motion is therefore **DENIED** as to the remaining portions of Amended Questions 1, 4, and 5.

The City's final argument regarding the subdivision appeal asks that we order Appellants to clarify their amended questions. Under V.R.C.P. 12(e), we may require an appellant to clarify questions that are "so vague or ambiguous that a party cannot reasonably be required to frame a respons[e]." Union Bank, No. 7-1-12 Vtec at 2 (Nov. 8, 2012) (quoting V.R.C.P. 12(e)). Questions must be clear enough to give the Court and the other parties notice of the grounds on which the

appellant's claim rest. See Reporter's Notes, V.R.C.P. 8(a) (citing <u>Conly v. Gibson</u>, 355 U.S. 41, 47 (1957)). Both the parties and the Court "are entitled to . . . know what issues to prepare for trial." <u>In re Unified Buddhist Church, Inc., Indirect Discharge Permit</u>, No. 253-10-06 Vtec, slip op. at 5 (Vt. Envtl. Ct. May 11, 2007) (Wright, J.).

The Court's goal in ordering Appellants to amend their Statement of Questions was to clarify the issues ahead of a decision on the pending motions for summary judgment. As the Court and the City noted at the December 19 status conference, Appellants original questions were framed quite broadly.[2] At the conference, the Court expressed its desire to avoid a situation that arose in <u>In re Atwood Planned Unit Development</u>, where the appellant's questions remained broad and ambiguous even after amendments. See <u>In re Atwood Planned Unit Dev.</u>, 2017 VT 16, ¶ 5, 204 Vt. 301. In that case, the Vermont Supreme Court reinforced the idea that all issues intrinsic to the Statement of Questions should be addressed. <u>Id.</u> ¶ 17. Here, this Court asked Appellants to specifically state any subsections of the UDR they wished to raise. In other words, to explicitly raise any intrinsic issues. Both parties indicated their understanding of that goal. The Court also informed both parties of its legal conclusion on the scope of review.

We agree with the City that the questions are not clearly worded, and we note that Appellants did not remove the broad phrasing that initially caused confusion. Yet the amended questions do clarify which subsections of the regulations are at issue. Appellants understood the Court's request to restate their questions with specificity, and they were aware of the scope of review. Thus, we can construe Appellants' Amended Statement of Questions to remove ambiguity. We **DENY** the City's motion to clarify and we interpret Appellant's remaining amended questions as follows:

1. **Ordinance § 3503**

    (1) Will the proposed subdivision conform to § 3503.A, as limited by § 3103?

    (2) Will the proposed subdivision conform to § 3503.B, as limited by § 3103?

---

[2] For example, Question 4 began: "Will the proposed subdivision conform to § 3506." The regulation, UDR § 3506, contains 11 subsections and over 30 subparts.

8

**3. Ordinance § 3505[3]**

(1) Will the proposed subdivision conform to § 3505.A(1), as limited by § 3103?

(2) Will the proposed subdivision conform to § 3505.A(2), as limited by § 3103?

**4. Ordinance § 3506**

(1) Will the proposed subdivision conform to § 3506.A(14) (street trees), as limited by § 3103?

(2) Will the proposed subdivision conform to § 3506.B (pedestrian and bicycle facilities), including §§ 3506.B(1), B(2), and B(3), as limited by § 3103?

**5. Ordinance § 3507**

(1) Has the applicant demonstrated that the proposed subdivision will be "compatible with the character of the neighborhood" under §§ 3507.A and B(3), as limited by § 3103?

The above issues are not new. The forthcoming summary judgment decision will consider Appellants' Amended Statement of Questions as construed above, along with the parties' briefs, to determine the scope of the regulations as limited by UDR § 3103.

**II.   Site Plan Appeal**

We now turn to the site plan appeal, Docket No. 4-1-19 Vtec. Appellants have withdrawn Questions 1 and 3, leaving Amended Questions 2(a) through (d). The City objects to amended questions in the site plan appeal on many of the same grounds as in the subdivision appeal. Where the City's arguments and our reasoning remain the same, we will refer to our discussion of the subdivision appeal above.

First, the City asks us to strike extraneous narrative and legal arguments from the Amended Statement of Questions. For the reasons set forth in our subdivision discussion, the motion to strike is **GRANTED** as to legal arguments and language going to the substance of the issues**.**

---

[3] Appellant's Question 2 has been withdrawn.

Second, the City argues that Amended Question 2(a) raises a new issue: a river setback requirement that was not part of the original Question 2(a). The City had a similar objection to Amended Question 3 in the subdivision appeal, and we find the argument equally unavailing here. Initially, Question 2(a) asked whether the Project will "comply with Chapter 210 of the Ordinance, including Figure 2-01 requiring 30 feet of frontage." While the original question explicitly referenced a frontage requirement, nothing in the question limited the scope of issues. The City acknowledged that the original Question 2(a) was framed broadly. See City's Motion for Summary Judgment on the Scope of Review, at 27 ("Chapter 210 . . . is over thirty pages long, and the City cannot discern which standards . . . Appellant is asking the Court to evaluate."). The sweeping nature of Appellants' questions led the Court to request clarification through the present amendments. For the reasons set forth in our subdivision discussion, we **DENY** the City's motion to dismiss Amended Question 2(a).

Third, the City contends that Amended Question 2(d)(2) seeks to expand the issues before the Court by questioning whether the Heney Lot is "truly part of a community facility" entitled to limited regulation under UDR § 3103. Keeping in mind that legal arguments in Appellants' Amended Statement of Questions have been struck, we do not agree that Amended Question 2(d)(2) introduces new issues. The Court's current understanding is that the Heney Lot is part of the Project and part of the site plan application. The Court informed both parties of its conclusion that the scope of review for the Project will be limited by UDR § 3103. We interpret Amended Question 2(d)(2) to ask whether "the project, including the Heney Lot, [will] comply with" certain regulations, as limited by § 3103. The motion to dismiss Amended Question 2(d)(2) is **DENIED.**

Fourth, the City asks us to dismiss portions of Amended Questions 2(a), 2(b), and 2(c) because they are outside the scope of review. These arguments will be addressed in our decision on the pending motions for summary judgment. For the reasons stated in our subdivision discussion, the motion is **DENIED.** The City's last argument asks that Appellants further clarify and revise their amended questions. We need not order additional clarification. For the reasons set forth in our subdivision discussion, the Court can construe Appellants' Amended Statement of Questions to remove ambiguity. We **DENY** the motion to clarify and interpret Appellants' amended questions as follows:

10

**2(a).  Chapter 210 of the Ordinance**

(1) Will the project conform to the setback requirements set forth in Chapter 210, Figure 2-01, as limited by § 3103?

**2(b).  Chapter 220 of the Ordinance (Design Control Overlay District)**

(1) Will the project comply with the standards found under §§ 2201.D(1), D(2), and D(7), as limited by § 3103?

**2(c).  Chapter 300 of the Ordinance (General Standards) and § 1203.G**

(1) Will the project comply with §§ 3002.G, 3005.D, and 3005.E, pertaining to setback from the river, as limited by § 3103?

(2) Will the changes to off-street parking in the nonconforming Heney Lot, including the landscaping and screening of the off-street parking, comply with §§ 1203.G and 3011.J as limited by § 3103?

**2(d).  Chapter 320 of the Ordinance (Additional Standards for Site Plan Review)**

(1) Will the project, including the Heney Lot, comply with the minimum width and internal walkway standards of §§ 3202.A and 3202.B, as limited by §3103?

(2) Will the project, including the Heney Lot, comply with the street-tree, parking-lot landscaping and screening standards of §§ 3203.F, 3203.H, and 3203.I, as limited by § 3103?

The forthcoming summary judgment decision will consider Appellants' Amended Statement of Questions as construed above, along with the parties' briefs, to determine the scope of the regulations as limited by UDR § 3103.

In conclusion, Appellants' motions to amend their Statements of Questions is **GRANTED**. In Docket No. 3-1-19 Vtec, the City's motion to strike and clarify is **GRANTED** as to legal arguments, language going to the substance of the issues, Amended Question 4(1)(C) concerning obligations on the Heney Lot, and Amended Questions 1(3), 3(3), and 5(2); and **DENIED** in all

11

other respects. The City's motion to strike and clarify in Docket No. 4-1-19 is **GRANTED** as to legal arguments or language going to the substance of the issues and **DENIED** in all other respects.

Electronically signed on February 4, 2020 at 02:55 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division